UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                    )
                                          )
    MICHAEL C. EVANS                       )  Case No. 09-10080-SSM
    MARY ANN D. EVANS                      )  Chapter 7
                                          )
                Debtors                    )


**MEMORANDUM OPINION ON MOTION AGAINST QUINTON E. YANCEY
FOR DISGORGEMENT OF FEES AND SANCTIONS**


A hearing was held on June 16, 2009, on the motion of W. Clarkson McDow, Jr., United

States Trustee, Region Four ("U.S. Trustee") to require Quinton E. Yancey ("the respondent") to

disgorge $700.00 in fees received for preparation of the debtor's petition, schedules, statement of

financial affairs, means test form, statement of intention, and other papers filed in this case, and

to impose fines and statutory damages on Mr. Yancey for violations of 11 U.S.C. § 110(b)(2)(A),

(h)(2), and (k).  The respondent, although filing a *pro se* response to the motion, did not appear at

the hearing, but following the hearing retained an attorney who filed a supplemental response

challenging the constitutionality of the statute.  Upon consideration of the pleadings, testimony,

exhibits and the argument of the parties, the court finds that the respondent violated Section 110

of the Bankruptcy Code.


<u>Background</u>

Michael C. Evans and Mary Ann D. Evans ("the debtors") filed a *pro se* voluntary

petition in this court on January 9, 2009, and received a discharge on July 15, 2009.  On their

schedules, they reported assets of $459,469;  liabilities of $857,889;  monthly take-home income

1

of $2,106; and monthly expenses of $7,179.  On their schedule of property claimed exempt

(Schedule C), the debtors listed $25,104 in real and personal property as exempt under various

sections of the Annotated Code of Virginia.  On page 3 of the petition, Mr. Yancey filled out and

signed the section labeled "Signature of Non-Attorney Bankruptcy Petition Preparer" indicating

that he "prepared this document for compensation and . . .  provided the debtor with a copy of

this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h) and

342(b)."  Also filed with the debtors' petition was the Declaration of Compensation of

Bankruptcy Petition Preparer, which indicates that the respondent was paid $200 by the debtors

for the preparation of the "official bankruptcy forms and related schedules."  However, the

debtors' Statement of Financial Affairs does not report *any* payments made to the respondent or

anyone else for bankruptcy assistance and advice..

    The U. S. Trustee filed the present motion to disgorge fees and impose fines on May 22,

2009, alleging that the respondent violated § 110 of the Bankruptcy Code for failing to disclose

truthfully the total fees charged; for failing to provide the debtors, before preparing the petition

documents, the written notice on Official Form 19 required by Rule 9009 of the Federal Rules of

Bankruptcy Procedure; and for engaging in the unauthorized practice of law by selecting the laws

providing legal authority for the debtors' claimed exemptions.  In a *pro se* response filed June 5,

2009, the respondent asserted that the $200 listed on the disclosure statement represented the cost

for the actual preparation of the bankruptcy forms; that the $700 charged to the debtors is

reasonable compensation for a certified public accountant; that he was not aware of the need to

give the debtors Official Form 19; that a software program selected the exemptions listed on the

debtors' petition; and that he did not advise the debtors of any exemptions.

At the hearing, Mr. Evans testified that he and his wife were referred to the respondent because they were unable to afford an attorney and that they paid $700 to the respondent for his services in preparing the bankruptcy petition and related schedules.  The debtors had two meetings with the respondent, who explained the differences between chapter 7 and chapter 13.  After those meetings, the debtors decided that filing a chapter 7 petition was best.  The debtors did not fill out any of the schedules or the statements, nor did they make the decision as to which property to claim as exempt and which statutes to use for those claimed exemptions on Schedule C.  Finally, Mr. Evans testified that he and his wife had been residents of the Commonwealth of Virginia for almost 11 years and that the respondent did not ask them at any point in their meetings how long they had lived in the state.

On June 22, 2009 — six days *following* the hearing — an attorney filed a notice of appearance on the respondent's behalf, and, on June 29, 2009, a written objection in which the respondent admitted to "some technical violations of Section 110" but argued that those violations are insignificant or moot because the statute is unconstitutional as it does not give the respondent fair warning as required by the Due Process Clause of the Fifth Amendment.

<u>Discussion</u>

### I.  SECTION 110

The conduct of non-attorney bankruptcy petition preparers is regulated by § 110 of the Bankruptcy Code, which was initially enacted as part of the Bankruptcy Reform Act of 1994 and expanded upon by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  The purpose of the statute was to address the proliferation of bankruptcy petition preparers not employed or supervised by attorneys and to enact limitations on and standards for the types of

activities in which bankruptcy petition preparers could be engaged, particularly with respect to

providing legal advice and engaging in the unauthorized practice of law. *In re Springs*, 358 B.R.

236, 241 (Bankr. M.D. N.C. 2006). *See also In re Crawford*, 194 F.3d 954, 960 (9th Cir. 1999),

*cert. denied*, 528 U.S. 1189, 120 S.Ct. 1244, 146 L.Ed.2d 102 (2000); *In re Moffett*, 263 B.R.

805, 812-13 (Bankr. W.D. Ky. 2001); *In re Farness*, 244 B.R. 464, 467 (Bankr. D. Idaho 2000).

Among other things, the statute requires the petition preparer to provide written notice

informing the debtor that he is not an attorney and may not give legal advice or practice law.

§ 110(b)(2), Bankruptcy Code.  The petition preparer is also required to disclose all fees received

from the debtor within the 12 months before the petition was filed and any remaining unpaid fee

charged to the debtor.  § 110(h)(2), Bankruptcy Code.  The statute prohibits the petition preparer

from: executing any documents on behalf of the debtor or providing legal advice, § 110(e),

Bankruptcy Code; using the word "legal" or any similar term in advertisements, § 110(f),

Bankruptcy Code; and collecting any court filing fees from the debtor, § 110(g), Bankruptcy

Code.  The statute provides a variety of sanctions for any violations, including disgorgement of

some or all fees charged, § 110(h)(3), Bankruptcy Code; fines, § 110(*l*)(1), Bankruptcy Code;

compensatory and statutory damages, § 110(i)(1), Bankruptcy Code; and injunctive relief,

§ 110(j), Bankruptcy Code.

Because the respondent raised a threshold constitutional argument in his after-the-fact

response to the U.S. Trustee's motion, the court must first address whether § 110 of the

Bankruptcy Code violates the Due Process Clause of the Fifth Amendment.  If so, the respondent

cannot be fairly sanctioned for activities he could not reasonably understand to be prohibited.  If

4

not, the court must then address whether the respondent's actions were prohibited by § 110 of the

Bankruptcy Code.

## II.  WHETHER SECTION 110 IS UNCONSTITUTIONALLY VAGUE

### A.

It is well settled that a statute violates due process and "is void for vagueness if its

prohibitions are not clearly defined."  *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct.

2294, 2298, 33 L.Ed.2d 222 (1972).  The requirement of definiteness is violated when a statute

"fails to give a person of ordinary intelligence fair notice that his contemplated conduct is

forbidden by the statute."  *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98

L.Ed. 989 (1954).  In *United States v. Lanier*, the Supreme Court further explained that "the

touchstone [of the fair warning requirement] is whether the statute, either standing alone or as

construed, made it reasonably clear at the relevant time that the defendant's conduct was

criminal."  520 U.S. 259, 267, 117 S.Ct. 1219, 1225, 137 L.Ed.2d 432 (1997).  In the Fourth

Circuit, "it is well settled law that one whose conduct clearly falls within the terms of statutory

regulations or prohibitions does not have standing to challenge such statutory provisions as being

facially overbroad or vague."  *Fisher v. Coleman*, 486 F.Supp. 311, 314 (W.D. Va. 1979).  *See*

*also Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974) ("One to

whose conduct a statute clearly applies may not successfully challenge it for vagueness.").

However, the standard of certainty required for civil sanctions is less than required for

criminal sanctions.  *Winters v. New York*, 333 U.S. 507, 515, 68 S.Ct. 665, 670, 92 L.Ed. 850

(1948).  *See also Kolender v. Lawson*, 461 U.S. 352, 358 n.8, 103 S.Ct. 1855, 1859, 75 L.Ed.2d

903 (1983) ("...where a statute imposes criminal penalties, the standard of certainty is higher.");

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99, 102 S.Ct.

1186, 1193, 71 L.Ed.2d 362 (1982) ("The Court has also expressed greater tolerance of

enactments with civil rather than criminal penalties..."); *Papachristou v. City of Jacksonville*, 405

U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972) ("greater leeway is allowed" in regards

to the fair notice required for regulatory statutes governing business activities); *LaRouche v.*

*Sheehan*, 591 F.Supp. 917, 920 (D. Md. 1984).  According to the court in *Hoffman Estates*, the

lower fair warning standard in statutes imposing civil sanctions is "because the consequences of

imprecision are qualitatively less severe."  *Hoffman Estates*, 455 U.S. at 499, 102 S.Ct. at 1193.

In addition, a civil statute not implicating constitutionally-protected conduct is

unconstitutionally vague only where the law "is impermissibly vague in all of its applications."

*Hoffman Estates*, 455 U.S. at 495, 102 S.Ct. at 1191.  Where the civil statute being challenged on

vagueness grounds does not involve First Amendment freedoms, the statute is not examined

generally but rather "as the statute is applied to the facts of [the] case."  *Chapman v. United*

*States*, 500 U.S. 453, 467, 111 S.Ct. 1919, 1929, 114 L.Ed.2d 524 (1991) (citing *United State v.*

*Powell*, 423 U.S. 87, 92, 96 S.Ct. 316, 319-20, 46 L.Ed.2d 228 (1975)).  Because this case does

not involve a criminal statute, nor does the challenge allege a violation of First Amendment

freedoms, the less stringent fair warning standard is applicable, and the court will examine § 110

of the Bankruptcy Code as it is applied to the facts in this case. [1]

---

[1]  At least one court has held that the Bankruptcy Code is law that regulates economic activity
and does not involve constitutionally protected activities, and thus, the entire Code is subject to
the more lenient test for constitutionality when a vagueness argument is raised.  *See Zolg v. Kelly*
*(In re Kelly)*, 841 F.2d 908, 915 (9th Cir. 1988) (citing *In re Talmadge*, 832 F.2d 1120, 1125 (9th
Cir. 1987)).

B.

The argument that § 110 of the Bankruptcy Code is unconstitutionally vague has been addressed by other courts, including courts in the Fourth Circuit, and has been uniformly rejected.  *See, e.g., Scott v. U.S. Trustee (In re Doser)*, 412 F.3d 1056 (9th Cir. 2005) (affirming *Scott v. U.S. Trustee (In re Doser)*, 292 B.R. 652 (D. Idaho 2003)); *Gould v. Clippard*, 340 B.R. 861 (M.D. Tenn. 2006); *In re Rose*, 314 B.R. 663 (Bankr. E.D. Tenn. 2004); *Martini v. We The People Forms & Serv. Ctr. USA, Inc. (In re Barcelo)*, 313 B.R. 135 (Bankr. E.D. N.Y. 2004); *In re Graham*, 2004 WL 1052963, at *9, 2004 Bank. LEXIS 1678, at *9 (Bankr. M.D. N.C. 2004). In fact, § 110 has been upheld and found to be constitutional and enforceable on all challenged grounds.  *See In re Crawford*, 194 F.3d 954 (9th Cir. 1999) (finding that § 110 does not violate the right to privacy in requiring the disclosure of the bankruptcy petition preparer's social security number nor does it violate the petition preparer's Fifth Amendment substantive due process right to engage in an occupation); *McDow v. We The People Forms & Serv. Ctrs., Inc. (In re Douglas)*, 304 B.R. 223 (Bankr. D. Md. 2003) (holding that § 110 does not violate a petition preparer's First Amendment freedom of speech rights); *In re Moore*, 283 B.R. 852 (Bankr. E.D. N.C. 2002) (holding that § 110 does not exceed Congress' authority under the Bankruptcy Clause of the Constitution); *In re Kaitangian*, 218 B.R. 102 (Bankr. S.D. Cal. 1998) (holding that § 110 does not violate petition preparer's equal protection right to pursue his chosen occupation because the right to pursue an occupation as a petition preparer is not a "fundamental right" for equal protection purposes).

Section 110 defines a bankruptcy petition preparer as "a person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who

prepares for compensation a document for filing." § 110(a)(1), Bankruptcy Code. It is therefore

"clear to whom the provisions of the statute apply." *Doser*, 412 F.3d at 1062. In addition, the

statute clearly sets forth the petition preparer's obligations and the activities that are prohibited,

including giving legal advice and "fraudulent, unfair, and deceptive conduct." § 110(b)-(i),

Bankruptcy Code.

In his objection, the respondent asserts that because § 110 does not specifically define the

term "preparation" and because case law analyzing the statute results in confusing standards for

petition preparers, he was not given the due process requirement of fair warning that his conduct

in preparing the debtors' petition was prohibited. However, as one court has noted, "Fair notice

is provided when prohibitions are clearly defined, but such definition does not limit courts to a

mechanical application which would lack relevance to the subject of the regulation." *Gould*, 340

B.R. at 884. Nor is it practical or even requisite for Congress to codify a list of all prohibited

conduct. *Barcelo*, 313 B.R. at 145. *See also Jordan v. De George*, 341 U.S. 223, 231, 71 S.Ct.

703, 708, 93 L.Ed. 886 (1951) ("Impossible standards of specificity are not required."). General

terms, such as "fraudulent, unfair, and deceptive conduct," do not render the statute

constitutionally vague, and there is ample case law defining those terms and holding that the

unauthorized practice of law is "unfair and deceptive." *Id.* Every court addressing a petition

preparer's constitutional challenge to § 110 on the basis of vagueness has concluded that the

statue provides definitions such that "a person of ordinary intelligence would have fair notice of

what conduct was forbidden under § 110," *Doser*, 292 B.R. at 658, and the respondent's

arguments do little to persuade this court otherwise. Accordingly, the court concludes that

Section 110 of the Bankruptcy Code does not violate the respondent's Fifth Amendment due process requirement of fair warning.

Before turning to the specific violations of § 110 asserted by the U.S. Trustee, the court must address one final issue. In his opposition, the respondent seems to assert that § 110 also violates his Fifth Amendment right to pursue any calling. Specifically, the respondent argues that § 110(k) "takes away what the rest of the [sic] section 110 grants: the right of a [bankruptcy petition preparer] to prepare a bankruptcy petition." However, there is no fundamental right under the equal protection clause of the Fifth Amendment to pursue a calling as a bankruptcy petition preparer. *See Jeter v. Office of the U.S. Trustee (In re Adams)*, 214 B.R. 212, 218 (9th Cir. BAP 1997); *Kaitangian*, 218 B.R. at 107. Nor does § 110 legitimize a profession. *In re Guttierez*, 248 B.R. 287, 297 (Bankr. W.D. Tex. 2000). *See also Tighe v. Scott, et al. (In re Buck)*, 290 B.R. 758, 762 (Bankr. C.D. Cal. 2003); *Tighe v. Mora (In re Nieves)*, 290 B.R. 370, 376 (Bankr. C.D. Cal. 2003). Instead, the statute was enacted to protect consumers from abuses by non-attorney bankruptcy petition preparers. *Douglas*, 304 B.R. at 236-37. As there is no fundamental right to pursue a livelihood as a petition preparer and because the purpose behind enacting § 110 was a legitimate one, the respondent has not been denied equal protection or due process under the Fifth Amendment.

### III.  WHETHER THE RESPONDENT VIOLATED SECTION 110

#### A.

The court now turns to the provisions of § 110 the U.S. Trustee asserts the respondent violated. First, the U.S. Trustee alleges that the respondent violated § 110(b)(2)(A) which requires a petition preparer to "provide the debtor a written notice which shall be on an official

9

form" before accepting any fees from the debtor or preparing any form for filing.  The form,

Official Form 19 — available at

http://www.uscourts.gov/rules/BK_forms_1207/B_019_1207f.pdf — requires the petition

preparer to inform the debtor that he is not an attorney, may not practice law, or may not give

legal advice, and the form must be signed by the debtor and the petition preparer and filed "with

any document for filing."  § 110(b)(2)(B), Bankruptcy Code.  In his *pro se* response, the

respondent admitted that he did not provide the debtors with Official Form 19 because he did not

know about the requirement or the official form.  However, ignorance of the law is no excuse,

*Grausz v. Sampson (In re Grausz)*, 302 B.R. 820, 826 (D. Md. 2002), and is not cause for

noncompliance with the requirements.  *See, e.g., Adams v. Giordano (In re Clarke)*, — B.R. —,

2009 WL 1704492, at *6 (Bankr. E.D. N.Y. 2009); *Nieves*, 290 B.R. at 377; *Marshall v. Bourque

(In re Hartman)*, 208 B.R. 768, 778 (Bankr. D. Mass. 1997).  Here, the required notice was not

provided to the debtors and was not filed with the debtor's petition.  Thus, the court finds that the

respondent failed to comply with § 110(b)(2) of the Bankruptcy Code.

B.

The U.S. Trustee next alleges that the respondent violated § 110(h)(2) by failing to

truthfully disclose the total fees charged to the debtors in the 12 months before the debtors' case

was filed.  Section § 110(h)(2) requires the petition preparer to file, with the petition, "[a]

declaration under penalty of perjury. . .disclosing *any fee* received from or on behalf of the debtor

within 12 months immediately prior to the filing of the case, and any unpaid fee charged to the

debtor."  (Emphasis added.)  The respondent did file a declaration, signed under penalty of

perjury, purporting to disclose the compensation he received, but the amount reported — $200 —

10

was not the actual amount — $700 — paid by the debtors.  In addition, <u>no</u> payment is listed on
Question 9 of the debtors' Statement of Financial Affairs, which requires the disclosure of "all
payments made...by...the debtor to any persons...for consultation concerning debt consolidation,
relief under the bankruptcy law or preparation of a petition in bankruptcy within one year
immediately preceding" the filing of the debtors' petition.  Mr. Evans's testimony that he and his
wife actually paid the respondent $700 for his services is corroborated by the invoice the debtors
received from the respondent, admitted as Exhibit 3, reflecting charges of $300 for the
preparation of the means test, $200 for a review of the debtors' credit report, and $200 for the
preparation of "bankruptcy documents," for a total of $700.

In his *pro se* response, the respondent asserts that he believed the disclosure form
required him to disclose only the amounts charged for "the time in actual preparation" of the
bankruptcy schedules and not for other activities related to the bankruptcy filing.  Further, he
asserted that he followed the practice of attorneys with whom he had conferred in disclosing only
those amounts charged for actual document preparation and that the debtors knew from the start
of the relationship what the fee would be and for which services they were paying.

This is truly a bizarre argument. When attorneys prepare bankruptcy petitions, only a
small portion of the fee charged to the client represents the direct time and labor involved in
mechanically entering information for the schedules and printing them.  Far more of the
attorney's time is spent analyzing the client's financial situation to determine whether and what
form of bankruptcy relief is appropriate, assisting and advising the client in claiming exemptions,
and advising the client with respect to other foreseeable issues that may arise in the case, such as
reaffirmation, surrender of collateral, and the like.  Just as an attorney would not be allowed to

parse his fee into reportable and non-reportable components, neither can a bankruptcy petition preparer.  This is not a case, the court stresses, in which Mr. Yancey's "other" services were of a type (for example, tax return preparation) which accountants routinely provide independent of a bankruptcy filing.  Here, the preparation of the "means test" analysis and review of the debtors' credit report was plainly for the purpose of advising them whether they were eligible to file under chapter 7 instead of chapter 13, see § 707(b), Bankruptcy Code, and ensuring that the schedule of creditors was complete.  Thus, those services are part and parcel of the bankruptcy services Mr. Yancey undertook to provide to the debtors.

In any event,§ 110(h)(2) requires the disclosure of "*any fee*" received from the debtors in the year before their bankruptcy filing, not just those fees connected to the typing (or computer entry and printing) of the schedules and petition.  Such a literal reading of the statute and the compensation disclosure form has been rejected by other courts.  *See Kaitangian*, 218 B.R. at 114 ("The plain language of the statute does not limit the fee received to only fees incurred in connection with typing the petition and schedules.").  Misunderstanding or ignorance of what the law requires is, again, no excuse and does not prevent the imposition of sanctions.  *Id.* at 115.  Because the respondent failed to accurately disclose the compensation he received from the debtors, the court finds that the respondent violated § 110(h)(2) of the Bankruptcy Code.

## C.

The U.S. Trustee next alleges that the respondent violated § 110 by engaging in the unauthorized practice of law by selecting "the specific law providing legal authority for the exemptions listed on the debtors' Schedule C."  Although § 110 does not specifically prohibit the unauthorized practice of law, § 110(k) states "Nothing in this section shall be construed to permit

12

activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law."  In essence, bankruptcy petition preparers may only be compensated for services they can lawfully perform and may not be compensated for any services that constitute the unauthorized practice of law.  *Springs*, 358 B.R. at 244.  *See also In re Dunkle*, 272 B.R. 450, 456 (Bankr. W.D. Pa. 2002); *Moffett*, 263 B.R. at 813; *Guttierez*, 248 B.R. at 294.

When determining whether conduct constitutes the unauthorized practice of law, the court looks to state law.  *Lucas v. Nickens, et al. (In re Lucas)*, 312 B.R. 559, 574 (Bankr. D. Md. 2004) (citing more than 10 cases holding the same).  In Virginia, one is considered to be practicing law when "he furnishes another advice or service under circumstances which imply his possession and use of legal knowledge or skill."  *Commonwealth v. Jones & Robins, Inc.*, 186 Va. 30, 34, 41 S.E.2d 720, 723 (1947).  Specifically, the practice of law occurs whenever:

> (1) One undertakes for compensation, direct or indirect, to advise another,  not his regular employer, in any matter involving the application of legal principles to facts or purposes or desires.
>
> (2) One, other than as a regular employee acting for his employer, undertakes, with or without compensation, to prepare for another legal instruments of any character, other than notices or contracts incident to the regular course of conducting a licensed business.
>
> (3) One undertakes, with or without compensation, to represent the interest of another before any tribunal.

*Id.* at 33-34.  In addition, "[a] nonlawyer giving assistance to the general public in the completion of forms . . . or rendering legal advice concerning the completion of these forms constitutes the unauthorized practice of law."  *In re Soulisak*, 227 B.R. 77, 80 (Bankr. E.D. Va. 1998).

Here, the U.S. Trustee asserts that the respondent engaged in the unauthorized practice of law by selecting specific provisions of Virginia law as the basis for the exemptions claimed on

the debtors' Schedule C.  Mr. Evans testified that he and his wife did not select which items to

claim as exempt on the schedules, how much to claim as exempt, or which statutes to use as the

basis for the claimed exemptions.  In his *pro se* response, the respondent denies engaging in the

unauthorized practice of law and explains that the "exemptions are a direct function of the

software. . . the software itself chooses the exemption . . .and [the software] calculates the state

and federal exemptions simultaneously and picks the best method for the client."

Numerous courts have held that the picking of exemptions for a debtor by a petition

preparer is the unauthorized practice of law under various states' laws.  *See, e.g., In re Rojero*,

399 B.R. 913, 920 (Bankr. D. N.M. 2008); *Springs*, 358 B.R. at 245; *In re Bush*, 275 B.R. 69, 83

(Bankr. D. Idaho 2002); *Dunkle*, 272 B.R. at 455-56; *In re Gomez*, 259 B.R. 379, 387 (Bankr. D.

Colo. 2001); *Guttierez*, 248 B.R. at 296; *Farness*, 244 B.R. at 471; *Kaitangian*, 218 B.R. at 110.

As one court has noted, "advising of available exemptions from which to choose, or actually

choosing an exemption for the debtor with no explanation, requires the exercise of legal

judgment beyond the capacity and knowledge of lay persons."  *Kaitangian*, 218 B.R. at 110.  *See

also McDow v. Mayton*, 379 B.R. 601, 607 (E.D. Va. 2007).  The result does not change simply

because the software program used by the respondent "selected" the claimed exemptions,[2] as

"[p]lugging in solicited information from questionnaires and personal interviews to a pre-

packaged bankruptcy software program constitutes the unauthorized practice of law."  *Id.  See

also Rojero*, 399 B.R. at 920 ("[The petition preparer] made those elections, even if her

---

[2]  While the respondent has not identified — much less demonstrated the operation of — the
software program he used to prepare the petition, the court would not be surprised if such
software provided defaults or suggestions addressing the most common choices.  However,
whether a default or suggested response is appropriate to a particular client's situation or instead
should be overridden requires the exercise of legal judgment, which is something only a licensed
attorney is authorized to do.

14

bankruptcy software program automatically uses the [state] exemption statutes.  Such actions

constitute an unauthorized practice of law."); *In re Hennerman*, 351 B.R. 143, 151 (Bankr. D.

Colo. 2006) ("The software based automation is inherently "legal advice" by a bankruptcy

petition preparer."); *Farness*, 244 B.R. at 472 ("He is not saved by his use of . . . bankruptcy

software which automatically placed the information he solicited from the Debtors' [sic] into the

appropriate schedule.)

In the present case, the respondent — even though he may have relied on a computer

program rather than his own knowledge or analysis  — nevertheless effectively chose which

exemptions the debtors would claim on Schedule C.  The act of selecting exemptions requires

"the exercise of legal judgment" as it requires knowledge of the Bankruptcy Code and the state

exemption statutes.  The Bankruptcy Code allows an individual debtor to exempt from the

bankruptcy estate either the property listed in § 522(d) — commonly referred to as the "federal

exemptions" — or property that is exempt under the law of the state in which the debtor has

resided for at least 730 days prior to the filing of the bankruptcy petition.  § 522(b)(1) and (3),

Bankruptcy Code.  If the debtor has not resided in one state for the 730-day period, the applicable

state law is the state in which the debtor has resided for the greater portion of the 180-day period

preceding the 730-day period.  § 522(b)(3)(A). The state whose exemption laws control,

however, may by statute "opt out" of allowing its residents to take the federal exemptions.

§ 522(b)(2), Bankruptcy Code. The majority of states — including Virginia and Maryland, but

not the District of Columbia — have opted out, with the result that only state exemptions and

general (non-bankruptcy) federal exemptions, such as the exemption for Social Security benefits)

can be taken if the laws of that state apply.

Since the debtors lived in Virginia for the 730 days preceding the filing of the bankruptcy petition, they were limited to taking the Virginia exemptions and any general (non-bankruptcy) federal exemptions. Virginia's exemption scheme, however, is not simple.  There is a list of specific items of property — some with dollar limits, some without — commonly referred to as the poor debtor's exemption. Va. Code Ann. 34-26.  In addition, a debtor may, under what is commonly referred to as the homestead exemption, exempt up to $5,000 of real or personal property not otherwise exempt by filing an instrument (known as a homestead deed) describing that property in the city or county in which the debtor resides, and, if real property is claimed, in the city or county in which the property is located.  Va. Code Ann. § 34-4, § 34-4.1, § 34-13. Additional amounts may be claimed if the debtor has a qualifying dependent or is a disabled veteran. Va. Code Ann. § 34-4, § 34-4.1.   Other statutes exempt a portion of a debtor's wages, personal injury and wrongful death recoveries, and  retirement savings plans.  Va. Code Ann. § 34-29, § 34-31, and § 34-34.  Finally, real or personal property held as tenants by the entirety is exempt from the claims of non-joint creditors of a husband and wife but may be administered by the trustee for the benefit of joint creditors.  *Vasilon v. Vasilon*, 192 Va. 735, 66 S.E.2d 599 (1951); *Sumy v. Schlossberg*, 777 F.2d 921 (4th Cir. 1985).

Mr. Evans testified that the respondent did not ask him or his wife how long they had lived in Virginia.  He nevertheless selected the Virginia exemption statutes as the basis for their exemptions.  Such actions "impl[ied] his possession and use of legal knowledge or skill" and involved the preparation of legal documents or forms, *Jones & Robins, Inc.*, 186 Va. at 34, and were an "exercise of legal judgment beyond the capacity and knowledge of lay persons." *Kaitangian*, 218 B.R. at 110.  As one court has noted, "Adequate legal representations requires

16

familiarity with bankruptcy law and its interplay with state law…all phases of analysis and document preparation, including resort to reference and document preparation resources, require…legal knowledge skill and experience." *Gomez*, 259 B.R. at 386. Thus, the court concludes that the respondent engaged in the unauthorized practice of law by selecting the claimed exemptions listed on the debtors' Schedules C. [3]

D.

Finally, the U.S. Trustee argues that in failing to accurately disclose his compensation and in engaging in the unauthorized practice of law, the respondent thus committed a "fraudulent, unfair, or deceptive act" under § 110(i)(1). Section 110(i)(1) provides for sanctions if the petition preparer violates any provision of § 110 or "commits an act that the court finds to be fraudulent, unfair, or deceptive." The Bankruptcy Code does not define "fraudulent, unfair, or deceptive" conduct, but courts have uniformly held that the unauthorized practice of law constitutes a "fraudulent, unfair, or deceptive" act. *Springs*, 358 B.R. at 246 ("a petition preparer

---

[3] Other courts have also found that advising and explaining to debtors the difference between chapter 7 and chapter 13 — which the respondent did in the present case — is also considered the unauthorized practice of law, as it "involves the analysis of a complex and highly sophisticated series of statutory and common law provisions." *Kaitangian*, 218 B.R. at 110 (quoting *Matter of Arthur*, 15 B.R. 541, 546 (Bankr. E.D. Pa. 1981) (internal quotations omitted). *See also*, *Hannigan, et al. v. Marshall (In re Bonarrigo)*, 282 B.R. 101, 105-106 (D. Mass. 2002). However, because the U.S. Trustee did not specifically allege that the respondent engaged in the unauthorized practice of law when he advised the debtors of the difference between chapter 7 and chapter 13, the court need not reach that issue. One difficulty is that the Bankruptcy Code itself requires that debtors be provided — if not by the "debt relief agency" assisting them, then by the clerk of court — with "a brief description of chapters 7, 11, 12, and 13 and the general purpose, benefits, and costs of proceeding under each of those chapters." § 342(b)(1), Bankruptcy Code. A form of such notice (Form B201) has been promulgated by the Administrative Office of U.S. Courts, and is available on this court's web site. http://www.vaeb.uscourts.gov/bkforms/b201.pdf. If providing such an explanation to a potential debtor would not implicate the clerk of court in the unlawful practice of law, it is somewhat difficult to see how it would constitute the unauthorized practice of law for someone else to provide that same information.

who engages in the unauthorized practice of law commits an unfair or deceptive act pursuant to

Section 110(i)"). *See also Frankfort Digital Servs., Ltd. v.. Neary (In re Reynoso)*, 315 B.R. 544,

553 (9th Cir. BAP 2004); *Rojero*, 399 B.R. at 921; *Gomez*, 259 B.R. at 387-88; *Guttierez*, 248

B.R. at 294.  Although the respondent asserts that he never held himself out as an attorney and

the debtors knew he was not an attorney, that disclosure is "particularly deceptive and

misleading," as the respondent solicited information from the debtors from which he prepared the

debtors' bankruptcy petition and schedules which required legal knowledge the respondent does

not possess as a non-lawyer.  *See Rojero*, 399 B.R. at 921; *Gomez*, 259 B.R. at 387.  As such, the

respondent committed an "fraudulent, unfair, or deceptive" act under § 110(i)(1) and may be

accordingly sanctioned.

## IV. SANCTIONS FOR VIOLATIONS OF SECTION 110

Section 110 provides a range of sanctions — including fines, disgorgement of fees, and

statutory damages — for violations by a bankruptcy petition preparer.  *See* § 110(*l*)(1), (h)(3)(B),

and (i)(1).  The court will first address disgorgement, then statutory damages and fines.

## A.  <u>Disgorgement of fees</u>

Section 110(h)(3)(A)(i) requires the court to "disallow and order the immediate turnover

to the bankruptcy trustee [of] any fee found to be in excess of the value of any services" provided

in the 12 months prior to the petition date.  Section 110(h)(3)(B) also provides that "[a]ll fees

charged by a bankruptcy petition preparer may be forfeited in any case in which the bankruptcy

petition preparer fails to comply with this subsection or subsection (b), (c), (d), (e), (f), or (g)."

Here, the U.S. Trustee seeks the disgorgement all fees received by the respondent, or, in the

alternative, a finding that the services provided by the respondent do have some value but that the

$700 fee charged "is disproportional to the services permitted to be performed by a bankruptcy petition preparer."  To that end, the U.S. Trustee urges the court to adopt the view that petition preparers are limited by § 110 to "scrivener services" and may only charge accordingly.  In his opposition, the respondent asserts that such an interpretation of § 110 is "counterintuitive," is not supported by legal precedence in the Eastern District of Virginia or the Fourth Circuit and that applying such an interpretation would be a retroactive sanction of the respondent.

Indeed, there are no reported or published cases from this district holding that a petition preparer is limited to performing only "scrivener services" and thus limited to corresponding charges for such limited services.  However, a number of cases from other districts in the Fourth Circuit support that interpretation of § 110.  *See e.g., In re Langford*, 2007 WL 3376664, 2005 Bankr. LEXIS 3201 (M.D. N.C. 2007); *In re Medley*, 2005 WL 3093392, at *3, 2005 Bankr. LEXIS 2290, at *7 (Bankr. M.D. N.C. 2005) ("The practice of preparing bankruptcy petitions, however, is perilous to the non-attorney because once the preparer exceeds the bounds of being a mere scrivener—to exercise discretion in providing guidance or advice—the preparer is in contravention of state laws regulating the practice of law."); *In re Graham*, 2004 WL 1052963, 2004 Bankr. LEXIS 1678 (Bankr M.D. N.C. 2004).  In *In re Moore*, the court found that it "[the petition preparer's] services must be limited to typing the documents as directed by his customer."  290 B.R. 287, 297-98 (Bankr. E.D. N.C. 2003).  The court in *Graham* listed the activities to which a petition preparer is limited, including meeting a prospective debtor, providing blank bankruptcy forms for the debtor to complete without assistance, typing the information on the bankruptcy forms without making any changes, copying the prepared documents for the debtor, and providing the original documents and copies to the debtor.

19

*Graham*, 2004 WL 1052963, at *9, 2004 Bankr. LEXIS 1678, at *27.  Further, the cases from the

Fourth Circuit are supported by the majority of courts.  *See e.g., Rojero*, 399 B.R. at 920; *In re*

*Gaftick*, 333 B.R. 177, 188 (Bankr. E.D. N.Y. 2005); *In re Woodward*, 314 B.R. 201, 205

(Bankr. N.D. Iowa 2004); *Bonarrigo*, 282 B.R. at 107; *Bush*, 275 B.R. at 84-86; *Gomez*, 259

B.R. at 386; *Guttierez*, 248 B.R. at 297-98; *Farness*, 244 B.R. at 467.  *But see Meininger v.*

*Burnworth, et al. (In re Landry)*, 268 B.R. 301, 308 (Bankr. M.D. Fla. 2001) (court accepted

hourly rate for the petition preparer, a paralegal, similar to billable rates for paralegals in local

law firms).  Because petition preparers may not engage in the unauthorized practice of law, they

are therefore limited in the services they may provide, and thus, they may only be compensated

for those services they are legally allowed to perform.

In addition, once a question has been raised regarding the petition preparer's fees under

§ 110(h)(3), the petition preparer bears the burden of proving the reasonableness of a fee charged

or received.  *See Springs*, 358 B.R. at 242-43; *In re Haney*, 284 B.R. 841, 850-51 (Bankr. N.D.

Ohio 2002); *Bush*, 275 B.R. at 85-86.  Here, the U.S. Trustee established that the respondent

acted as a petition preparer and collected a fee of $700 from the debtors.  Although the

respondent asserted a variety of justifications for his fees in his *pro se* response, he failed to

attend the hearing and thus failed to show, by a preponderance of the evidence, that the fee he

collected from the debtors was reasonable compensation for his services.  Because the

respondent failed to prove the reasonableness of the fees collected, the court finds that fees paid

by the debtors were in excess of the value of the respondent's services.  This court has previously

held — albeit in an unpublished opinion — that a petition preparer's fees should ordinarily be no

more than $160 for the services he or she is lawfully allowed to provide.  *See In re Darryl Shorts*,

Case No. 08-14487-SSM (March 11, 2009).  In the absence of any evidence by the respondent to

show that a greater amount was reasonable in this case, the court will adopt its prior ruling. Thus,

the respondent shall turn over to the trustee the sum of $540.00,  representing the fees received

minus the $160 amount previously determined by this court as the maximum fee a petition

preparer may charge in this district.

### B  Statutory Damages.

The U.S. Trustee also seeks statutory damages under § 110(i).  Section 110(i) requires the

court to order payment to the debtor of any actual damages *plus* the greater of $2,000 or "twice

the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services" for

*any* violation of § 110 or if the court finds the petition preparer engaged in a "fraudulent, unfair,

or deceptive" act. § 110(i)(1)(B), Bankruptcy Code.  In this case, there has been no evidence of

any actual damages sustained by the debtors.  Their case was not dismissed as a result of any

dereliction by the respondent, and, indeed, they have received the relief they sought, namely a

bankruptcy discharge.  As previously explained, however, the respondent engaged in the

unauthorized practice of law and thus committed a "fraudulent, unfair, or deceptive" act.  In

addition, the respondent failed to accurately disclose the full amount of compensation received

from the debtors.  Once those violations are shown, the plain language of the statute makes an

award of statutory damages mandatory even in the absence of any actual damages.  Thus, the

court orders the respondent to pay to the debtors $2,000.

### C.  Fines

This leaves for consideration the U.S. Trustee's request for imposition of fines.  Under

§ 110(*l*)(1), Bankruptcy Code, a bankruptcy petition preparer may be fined not more than

21

$500.00 for each violation of § 110(b), (c), (d), (e), (f), (g) or (h).  As discussed above, the evidence establishes a violation of § 110(b) by failing the provide the debtors with the required notice of the limitations imposed on bankruptcy petition preparers and of § 110(h) by falsely stating the amount of compensation he received from the debtors.  Thus, the respondent may be fined up to $500.00 for each violation, or a total of $1,000.00.  Unlike fee disgorgement and statutory damages, which are mandatory, fines are permissive and addressed to the court's discretion.  Given that the conduct for which the U.S. Trustee seeks imposition of fines is the same conduct for which the court has awarded statutory damages, the court is loath to engage in what might fairly be viewed as piling on.  Under the circumstances, the court will impose a fine of $150.00 for the violation of § 110(b) and a fine of $250.00 for the violation of § 110(h), for a total of $400.00.

## Conclusion

Congress enacted § 110 of the Bankruptcy Code as a consumer protection measures to protect debtors against the perceived abuses of non-lawyer bankruptcy petition preparers.  Although not every term in the statute is defined, the lack of precise definitions does not render the statute unconstitutionally vague.  The statute clearly defines to whom the provisions apply and both the prohibitions and various affirmative duties the petition preparer must perform.  In addition, the statute does not legitimize a profession, nor does it authorize petition preparers to perform services that are considered the unauthorized practice of law.  Thus, petition preparers may only charge fees for those activities they are lawfully allowed to perform.  In the present case, the respondent petition preparer violated §§ 110(b)(2)(A) and 110(h)(2) and committed a "fraudulent, unfair, or deceptive" act by engaging in the unauthorized practice of law.

A separate order will be entered consistent with this opinion.

Date: **August 23, 2009**                 /s/ Stephen S. Mitchell
_____     _____

                                        Stephen S. Mitchell
Alexandria, Virginia                    United States Bankruptcy Judge

## ENTERED ON DOCKET: August 23, 2009

Copies to:

Frank J. Bove, Esquire
Office of the United States Trustee
115 S. Union Street, Suite 210
Alexandria, VA 22314

Quinton E. Yancey
Accounting Associates
2251 Valley Avenue
Winchester, VA 22601
Respondent

Daniel L. Grubb, Esquire
Dunlap, Grubb & Weaver, P.C.
199 Liberty Street, S.W.
Leesburg, VA 20175
Counsel for respondent

Michael C. Evans
Mary Ann D. Evans
P.O. Box 322
Purcellville, VA 20134
Debtors *pro se*

Gordon P. Peyton, Esquire
Redmon, Peyton & Braswell
510 King Street, Suite 301
Alexandria, VA 22314
Chapter 7 trustee